**This order is SIGNED.**

**Dated: January 4, 2019**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

slo

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 17-29915 |
|---|---|
| JAMES BYRON KELLEY and CHRISTIANA FAYTH KELLEY | Chapter 7 |
| | Hon. Kevin R. Anderson |
| Debtors | |

**MEMORANDUM DECISION ON MOTION FOR SANCTIONS
FOR VIOLATION OF THE AUTOMATIC STAY (DOCKET NO. 34)**

Is it a credible defense to a motion for sanctions for stay violations for a creditor to claim it lacked notice of the bankruptcy filing, even after service of multiple bankruptcy papers followed by phone calls from the debtors? The Court thinks not.

**I.    JURISDICTION, NOTICE, AND VENUE**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is appropriate in this District under 28 U.S.C. §§ 1408 and 1409, and notice of the motion was properly served on all parties in interest.

## II.     FACTS

### 1.     The Bankruptcy Filing and Written Communications to Vivint Regarding the Debtors' Bankruptcy Case.

On November 14, 2017, James Byron Kelley and Christiana Fayth Kelley ("Mrs. Kelley" or collectively, the "Debtors") filed a Chapter 13 petition for relief. The Debtors listed Vivint Smart Home ("Vivint") as a creditor with the following address: Vivint, 4931 N 300 W, Provo, UT 84604 (the "Provo Address").[1] At the hearing, Vivint confirmed that the Provo Address is where bankruptcy notices should be mailed. Indeed, Vivint confirmed that the Provo Address is the only address where Vivint receives public mail. At the time of the bankruptcy filing, the Provo Address was also the address for Vivint's registered agent.

The Debtors' Schedule G stated that they were rejecting their executory contract with Vivint for a home security system.[2] On February 9, 2018, the Debtors converted their bankruptcy case to Chapter 7.[3] The Debtors' amended Schedule G in their Chapter 7 case likewise provided for rejection of a contract with Vivint.[4]

The Court's docket establishes that the following bankruptcy papers were served on Vivint at the Provo Address:

| DATE | DOCKET NO. | PAPER | SERVED BY |
| --- | --- | --- | --- |
| 11/24/17 | 9 | Notice of Chapter 13 Bankruptcy Case | Bankruptcy Noticing Center |
| 11/24/17 | 10 | Chapter 13 plan | Bankruptcy Noticing Center |
| 02/09/18 | 20 | Notice of Substitution of Counsel | Debtors' Counsel |

---

[1] The Debtors filed a list of creditors with the Court on November 14, 2017 pursuant to Fed. R. Bankr. P. 1007(a)(1) and Local Rule 1007-1(b).
[2] Docket No. 4 at pg. 37.
[3] Docket No. 21.
[4] Docket No. 25 at pg. 49.

| 02/11/18 | 22 | Notice of Chapter 7 Bankruptcy Case | Bankruptcy Noticing Center |
|---|---|---|---|
| 03/29/18 | 29 | Notice of Assets & Deadline to File a Proof of Claim | Bankruptcy Noticing Center |
| 05/11/18 | 33 | Order of Discharge | Bankruptcy Noticing Center |

The Court's Returned Mail Report shows that none of the papers served by the Bankruptcy Noticing Center to Vivint's Provo Address were returned as undeliverable.

In addition, on April 18, 2018, Debtors' counsel sent Vivint a letter to the Provo Address with the heading "Notice of Filing of Bankruptcy and Notice of Intent to Seek Contempt Citation" (the "Attorney's Letter").[5] The Attorney's Letter contained the following information: (1) It advised Vivint of the Debtors' bankruptcy filing, the effect of the automatic stay, and the consequences for violating the stay; (2) it noted Vivint's post-petition payment demands on the Debtors; (3) it advised Vivint that the Debtors "are willing to overlook the violations that have occurred to date if [Vivint] will comply [with the automatic stay] from this point forward;" and (4) it requested written confirmation of Vivint's willingness to comply by May 4, 2018. Perhaps a coincidence, but it is curious, as described below, that Vivint assigned the Debtors' account to a collection agency on or about May 3, 2018.

At the hearing, Vivint's representative, Landon Potter, insisted that Vivint has no record of receiving any of these seven served communications regarding the Debtors' bankruptcy case.

### 2. Telephonic Communications to Vivint Regarding the Debtors' Bankruptcy Filing.

Mrs. Kelley testified that she contacted Vivint by telephone starting in January 2018 to inform Vivint of the Debtors' bankruptcy filing and requested that Vivint no longer contact she or

---

[5] Debtors' Exhibit 4.

her husband. On February 15, 2018, the Debtors received a phone call from a Joyce Black at Vivint, who left a voice message about a problem with the Debtors' Vivint account.[6] On the same day, Mrs. Kelley returned the call and spoke with another Vivint representative. Mrs. Kelley again informed Vivint of the Debtors' bankruptcy filing and requested that Vivint cease any further communications.

The paralegal for Debtors' counsel testified that on February 21, 2018, she called Vivint and spoke to a person named "Steve" in the billing department. The paralegal informed Steve of the Debtors' bankruptcy filing, that Vivint was still sending the Debtors collection notices, and that Vivint should stop contacting the Debtors. The paralegal also testified that Steve acknowledged receiving a copy of the Notice of Substitution of Counsel from Debtors' counsel, and that he would put the Debtors on a "no-contact list." Vivint's representative testified that he listened to the recording of this phone call and confirmed that the paralegal had informed Steve of the Debtors' bankruptcy filing, and that Steve had placed the Debtors on the no-contact list. However, he stated that there was no mention of the Notice of Substitution of Counsel.

### 3. Vivint's Post-Petition Contacts with Debtors for Payment.

After their bankruptcy filing, Vivint initiated the following communications with the Debtors:

| DATE | NATURE OF COMMUNICATION |
|---|---|
| January 2018 | Email or text message from Vivint.[7] |
| 02/15/18 | Voice message from Joyce Black at Vivint: ""Hi this is Joyce Black calling from Vivint, your home security company. I was calling in urgent regards to your account. Please give us a call back at #########. According to our records |

---

[6] During the hearing, the Debtor played from her phone the voice message left by Joyce Black.

[7] Mrs. Kelly testified that she received either an email or a text message from Vivint in January 2018. The Debtors did not provide a copy of an email or text message dated in January 2018, but the Court found Mrs. Kelley's testimony to be credible.

| | |
|---|---|
| | there's an issue with your account that must be resolved immediately. Again, our phone number is #####. Thank you." |
| 02/16/18 | Email notification of "Past Due Account" and request for payment.[8] |
| 03/16/18 | Email notification of "Past Due Account" and request for payment.[9] |

Vivint's emails contained a banner in large letters saying, "Past Due Account!" It informed the Debtors that their "monthly balance is currently 60 days overdue." It contained a smaller banner saying, "Make Payment." The email on March 16, 2018 included the following warning: "If acceptable payment or payment arrangement is not made, Vivint will accelerate your agreement for immediate collection."

### 4. Vivint's Assignment of the Debtors' Account to a Collection Agency.

Despite being served with a notice of the Debtors' Chapter 13 case, a notice of the conversion to Chapter 7, four bankruptcy papers from the Bankruptcy Noticing Center, a letter from Debtors' counsel, and various phone calls regarding the Debtors' bankruptcy filing, Vivint nonetheless assigned the Debtors' account to Sequium Asset Solutions, a collection agency (the "Collection Agency").

Mrs. Kelley testified that around May 3, 2018, she received a phone call from the Collection Agency about the Vivint account. Mrs. Kelley informed the Collection Agency about the bankruptcy, but the Collection Agency questioned her veracity, and Mrs. Kelley terminated the call in tears.

Around this same time, the Debtors also received a demand letter from the Collection Agency dated May 3, 2018 seeking payment of the Vivint debt in the amount of $728.01.[10] The

---

[8] Debtors' Exhibit 3 at pg. 1-2.
[9] Debtors' Exhibit 3 at pg. 3-4.
[10] Debtors' Exhibit 3 at pg. 11-12.

letter clearly states that "[t]his notice is being sent to you by a collection agency," that "this is an attempt to collect a debt," and that "this communication is from a debt collector."

5. **The Debtors' Response to Vivint's Post-Petition Collection Efforts.**

Vivint's post-petition debt collection efforts caused the Debtors frustration, stress, and anxiety. Much of the hearing was consumed exploring other stress factors in Mrs. Kelley's life. The Court concludes that these other stresses are irrelevant to the motion. What is relevant is that Debtors were initially annoyed and frustrated with the continual communications from Vivint regarding their dischargeable debt, and that they understandably became significantly stressed and worried when Vivint assigned the account to the Collection Agency. Mrs. Kelley had additional cause for anxiety because her employment with the federal government required a certain security clearance, and she was apprehensive that the actions of Vivint and the Collection Agency could jeopardize her employment. Finally, there was evidence that on May 7, 2018, after receiving the communication from the Collection Agency, that Mrs. Kelley had to see her doctor for, *inter alia*, "situational stresses."[11]

6. **Vivint's Untimely Response to the Debtors' Motion for Sanctions.**

After receiving the debt collection notices from the Collection Agency, the Debtors asked their counsel to file a motion for sanctions. Debtors' counsel served Vivint at its Provo Address the motion for sanctions and a notice of hearing.[12] The notice of hearing set a response date of June 25, 2018 and a hearing date of July 16, 2018. Vivint did not respond to the motion for sanctions, so on July 11, 2018, the Debtors filed and served on Vivint a request for the Court to grant its motion.[13] On July 13, 2018, Vivint finally responded alleging: (1) Vivint did not have

---

[11] Vivint Exhibit G.

[12] Docket Nos. 34 and 35.

[13] Docket No. 37.

notice of the motion for sanctions and only learned of it from "counsel for a creditor in this matter;" and (2) Vivint "could not locate any record of receiving any notices regarding the Debtors'" bankruptcy.[14] Vivint appeared at the hearing on July 16, 2018, where the Court ordered the parties to file a proposed scheduling order and set the matter for a final evidentiary hearing.

### III. ANALYSIS

The automatic stay of 11 U.S.C. § 362[15] is a cornerstone of the bankruptcy system. It arises immediately upon the filing of the bankruptcy petition and stays any "act to collect, assess, or recover a claim against the debtor." Its purpose is to provide debtors a reasonable reprieve from collection efforts pending qualification for a discharge. It also maintains the status quo so a trustee can assess and collect the debtor's assets to make an equitable distribution to all creditors.

A creditor's observance of the stay is safeguarded by the serious consequences that flow from its violation.[16] Section 362(k) provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

The Tenth Circuit has defined the standard for finding a violation of the stay under § 362(k):

> [W]e hold that in order to demonstrate a violation of § 362(k)(1), the debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. Notice of the bankruptcy filing need not be formal or official to put a creditor on notice.[17]

---

[14] Docket No. 41.

[15] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

[16] *See Easley v. Collection Servs. of Nev.*, No. 17-16506, 2018 U.S. App. LEXIS 35857, at *11, 2018 WL 6693470, at *4 (9th Cir. Dec. 20, 2018) ("Imposition of damages and attorneys' fees and costs is essential to deter creditors from violating an automatic stay and protect debtors' assets for proper adjudication through the bankruptcy process. Recovery of attorneys' fees and costs is especially critical in the bankruptcy context where debtors lack the means to otherwise pursue their damages.").

[17] *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007) (citations omitted).

**1.      Vivint has not Rebutted the Presumption that It Received the Served Notices of the Debtors' Bankruptcy Filing.**

The first issue is whether Vivint had notice of the Debtors' bankruptcy filing. Vivint received no less than five notifications from the Bankruptcy Noticing Center, including the initial "Notice of Chapter 13 Bankruptcy Case" and the "Notice of Chapter 7 Bankruptcy Case" when the Debtors converted their case. All notices from the Bankruptcy Noticing Center went to Vivint's Provo Address, and Vivint conceded that this was the appropriate address for such notices. None of the notices were returned as undeliverable. Vivint received an additional notice of the bankruptcy when Debtors' counsel served it with his substitution as counsel.

Vivint asserts that it has no record of receiving any of these mailed notices. The Court is incredulous. If Vivint did not receive one of these served papers, it might merit consideration, but to claim that all seven of these mailed communications[18] regarding the bankruptcy filing were lost or otherwise not received by Vivint is simply inconceivable.

"Papers sent by United States mail are presumed received by the addressee, absent evidence to the contrary."[19] That presumption is even stronger when a paper is served by the Bankruptcy Noticing Center.[20] Furthermore, maintaining this presumption is essential to the effective operation of the bankruptcy system:

> If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of

---

[18] These seven mailed communications consist of the five bankruptcy papers served by the Bankruptcy Noticing Center, the notice of substitution of counsel served by Debtors' counsel, and the Attorney's Letter mailed by Debtors' counsel.

[19] *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 801 n.20 (10th Cir. BAP 2003).

[20] *In re Reyes*, No. 17-23817-B-13, 2017 WL 6205771, at *4, 2017 Bankr. LEXIS 4175, at *10 (Bankr. E.D. Cal. Dec. 5, 2017) (citations omitted) (noting distinction in presumption between documents served by adverse party and documents served by the Bankruptcy Noticing Center); *see also Denmon v. Runyon*, 208 B.R. 225, 227 (D. Kan. 1997) (when notice involves a mailing from a bankruptcy court, and a certification of mailing is in the record, an allegation of denial of receipt does not, by itself, rebut the presumption of proper notice); *In re Loomas*, 2013 Bankr. LEXIS 4340, at *18, n.38, 2013 WL 5615943, at *4, n.38 (10th Cir. BAP 2013) ("as the bankruptcy court correctly pointed out, evidence of proper mailing [by the court] raises a rebuttable presumption of delivery . . . mere denial of receipt alone does not rebut the presumption that the mailed item was received").

deadlines and bar dates under the Bankruptcy Code would come unraveled. For this reason, an allegation that no notice was received does not, by itself, rebut the presumption of proper notice.[21]

Vivint's representative testified that it has procedures in place to properly route bankruptcy notices to the legal department; that Vivint receives approximately 1,500 bankruptcy notices per year; and that it is not aware of any other bankruptcy notice being missed or not properly processed to stop further collection actions. Vivint cites to *In re Winders* in support of its argument that the completeness of its processes, coupled with the lack of other complaints, is sufficient to rebut the presumption of receipt.[22] However, *Winders* only involved one missing bankruptcy paper – not seven. And more importantly, the facts in the present case belie the efficacy and credibility of Vivint's procedures.

As noted above, Vivint cannot plausibly argue that all seven pieces of properly addressed mail regarding the Debtors' bankruptcy case were lost. The Court also notes that Vivint did not timely respond to the Debtors' motion for sanctions, with Vivint again claiming that it had not received any of the papers served in connection with the motion, and that it only learned of the motion through a creditor.

Further, this is not the only instance of Vivint failing to properly honor the effect of a properly served bankruptcy notice. In the Northern District of Texas, Vivint was involved with an almost identical violation of the stay.[23] In *In re Lara*, Vivint received notice of the debtor's bankruptcy filing at the same address used in this case – the Provo Address. Likewise, after the bankruptcy filing, Vivint continued to demand payment from the debtors and ultimately referred the account to a collection agency. Even after the Lara's filed their motion for sanctions, Vivint

---

[21] *Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495, 497 (9th Cir. BAP 1987) (citing *Bd. Of Cnty. Comm'rs of Sedgwick Cnty. V. Coleman Am. Props., Inc. (In re Am. Props.)*, 30 B.R. 247, 250 (Bankr. D. Kan. 1983)).
[22] *Shawnee State Bank v. First Nat'l Bank of Olathe (In re Winders)*, 201 B.R. 288 (Bankr. D. Kan. 1996).
[23] *In re Lara*, 569 B.R. 231 (Bankr. N.D. Tex. 2017).

continued to contact them seeking payment. Further, Vivint did not respond to the motion for sanctions, and the matter was heard without their participation.[24] The *Lara* court found Vivint's conduct to be "outrageous" and awarded $24,000 in punitive damages.

But that was not the end of the matter. Vivint never responded to the Laras' efforts to collect their judgment for sanctions, so they later filed a motion for contempt against Vivint. In the second *Lara* opinion,[25] the court noted that the judgment in the prior case was served on Vivint's registered agent and counsel, Nathan Wilcox, and that the debtors' motion to reopen the case and for contempt sanctions was served by registered mail on Vivint and signed for by a Janet Taufer. However, Vivint again failed to respond to the debtors' motions. Based on its failure to respond to the order awarding sanctions, the court found that "Vivint's conduct is appalling."[26] Nonetheless, the *Lara* court ruled that failing to pay a money judgment did not qualify as contempt of court, so it did not award further sanctions against Vivint. Therefore, the Court views the *Lara* decisions as additional indicia of Vivint's willful or negligent indifference to the effect of the automatic stay when one of their customers files for bankruptcy protection.

In the present matter, Vivint also argued that even if it did receive the bankruptcy notices and papers, it would have been difficult for Vivint to link the Debtors' Utah address listed in the bankruptcy notices with the Debtors' original Texas address[27] because Vivint has over a million customers in its database. First, it is either implausible or unreasonable that Vivint has no other means of tracking its customers than by the address used when they first signed up with Vivint.

---

[24] Counsel for Vivint argued that it was unfair for this Court to consider the *Lara* decision because Vivint did not appear and defend. This would only be unfair if Vivint did not have notice of the motion in *Lara*. However, the *Lara* court specifically found that notice was proper, being served on the Provo Address. Moreover, the *Lara* decision is a published decision in the Bankruptcy Reporter. The Court assumes that a corporate entity like Vivint with a dedicated legal department would be aware of reported decisions to which it is a party.

[25] *In re Lara*, No. 16-5020, 2017 Bankr. LEXIS 2527, 2017 WL 4457436 (Sept. 6, 2017 Bankr. N.D. Tex.).

[26] *Id*. at *3.

[27] When the Debtors signed their Vivant home security contract, they were living in Texas.

Second, upon receiving the notice of a bankruptcy filing, a creditor has a duty to engage in some due diligence to identify the debtor to avoid violating the stay. And most problematic is that Vivint apparently had no problem matching up the Debtors' account with their Utah address when it assigned their debt to the Collection Agency, who mailed the collection letter to the same address listed on the notice of the Debtors' bankruptcy filing. The Court finds this defense to be frivolous.

Having heard the evidence in this case, and having read the *Lara* opinions, the Court can only conclude that Vivint's procedures for processing bankruptcy notices are inadequate, are unintentionally not being followed, or are intentionally being ignored – none of which speaks well of Vivint.

For these reasons, the Court finds that Vivint had actual notice of the Debtors' bankruptcy filing within days of the Bankruptcy Noticing Center mailing the Notice of Chapter 13 Bankruptcy Filing on November 24, 2017. The Court further finds that Vivint received ongoing notices of the Debtors' bankruptcy filing with each paper served by the Bankruptcy Noticing Center and the Notice of Substitution of Counsel served by Debtors' counsel, Mr. Webster.

**2.      Vivint Also Had Actual Notice of the Debtors' Bankruptcy Filing Through Telephonic Communications and the Letter Sent by Debtors' Counsel.**

As mentioned above, "[n]otice of the bankruptcy filing need not be formal or official to put a creditor on notice."[28] Mrs. Kelley testified that she contacted Vivint in January 2018 about their bankruptcy filing, and that when she returned Vivint's call on February 15, 2018, she again informed them of the bankruptcy. Vivint did not dispute that on February 21, 2018, the paralegal called Vivint and informed them of the Debtors' bankruptcy filing. Lastly, Debtors' counsel mailed a letter to the Provo Address informing Vivint of its improper contact with the Debtors, offering to overlook the violations if Vivint would stop its collection efforts, and warning that if Vivint did

---

[28] *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

not stop, the Debtors would seek sanctions. For these reasons, the Court finds that even if the United States Postal Service somehow lost seven pieces of mail, Vivint still had actual notice of the Debtors' bankruptcy filing by at least February 21, 2018, when the paralegal called Vivint.

### 3. Vivint Willfully Violated the Automatic Stay.

As adopted by the Tenth Circuit Bankruptcy Appellate Panel:

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.[29]

Further, "[o]nce the creditor becomes aware of the filing of the bankruptcy petition and therefore the automatic stay, any intentional act is 'willful.'"[30]

The Court has found that Vivint was on notice of the Debtors' bankruptcy filing from the bankruptcy papers served by the Bankruptcy Noticing Center, from written documents sent by Debtors' counsel, and from telephonic communications.

After the bankruptcy filing and continuing through the filing of this motion, Vivint took intentional actions seeking to collect its pre-petition debt from the Debtors. Vivint's communications included at least two emails and at least one phone call. Most problematic is that after the ongoing notices and communications of the Debtors' bankruptcy filing, Vivint assigned the Debtors' account to a collection agency with the obvious threat of legal action to recover $728.01 on a pre-petition debt.

Based on these facts, the Court finds that Vivint had both actual and constructive notice of the Debtors' bankruptcy filing, and that despite such notice, Vivint willfully engaged in efforts to

---

[29] *Diviney v. NationsBank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP 1998) (quoting *INSLAW, Inc. v. United States*, 83 B.R. 89 (Bankr. D.D.C. 1988)).

[30] *In re Sullivan*, 357 B.R. 847, 853 (Bankr. D. Colo. 2006) (internal quotations and citation omitted).

"collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case."[31] Thus, Vivint willfully violated the stay for purposes of § 363(k).

**4.    The Debtors Suffered Actual Damages.**

Having found a willful violation of the stay, the injured party must establish actual damages arising from such violation. The phrase "actual damages" implies that an actual injury must take place that has caused financial expense or harm.[32] In addition to the time and stress Vivint's actions caused the Debtors, the evidence established that Mrs. Kelley incurred at least $40 to visit her doctor on May 7, 2018 after contact from the Collection Agency. The Debtors also claimed damages for emotional distress, but the evidence was insufficient to support such an award.[33] The Court assumes the Debtors had other actual damages, such as taking time off work to appear at the hearing, but counsel did not present evidence of such damages, so they will not be considered. The Court thus finds that the Debtors are entitled to actual damages of $40.

**5.    The Debtors Incurred Costs and Attorneys' Fees.**

Actual damages also include a debtor's "costs and attorneys' fees" in seeking relief under § 363(k). On July 11, 2018, Debtors' counsel filed an affidavit with the Court showing fees of $3,760 for services up through the filing of the motion for sanctions.[34] Debtors' counsel has since incurred additional fees in prosecuting the motion. Within fourteen (14) days of the entry of this decision, Debtors' counsel shall file an amended application stating all reasonable fees and costs incurred in addressing Vivint's violation of the automatic stay. Vivint will have twenty-one (21)

---

[31] § 362(a)(6).

[32] *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1171 (10th Cir. 2007) (internal citations omitted).

[33] *See PNC Bank N.A. v. Ogden (In re Ogden)*, 2016 U.S. Dist. LEXIS 35338, at *25, 2016 WL 1077355, at *8 (D. Colo. Mar. 18, 2016) (citing to *In re Snowden*, 769 F.3d 651, 656-57 (9th Cir. 2014) (§ 362(k) permits an award of emotional distress damages if the debtor suffers significant harm, clearly establishes the significant harm, and demonstrates a causal connection between that significant harm and the violation of the automatic stay)).

[34] Docket No. 38.

days from the filing of such application to object to such fees and set the matter for a hearing. Otherwise, the fees claimed in the application will be allowed as actual damages.

### 6.     **Punitive Damages.**

Section 363(k) further provides that "in appropriate circumstances, [a debtor] may recover punitive damages." Vivint argued that because the Debtors' initial disclosures did not mention punitive damages, they are barred from seeking this relief. However, the first page of the Debtors' motion for sanctions states they are seeking punitive damages.[35] The memorandum in support then cites to a case allowing for punitive damages.[36] Thus, Vivint was clearly on notice that the Debtors were seeking punitive damages through their motion. Further, § 362(k) expressly authorizes punitive damages in appropriate circumstances, and the Court independently finds this case to involve appropriate circumstances.

The evidentiary standard for awarding punitive damages is higher than for actual damages.[37] Punitive damages are appropriate under this section "when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so."[38] While the Debtors' actual damages are minimal, punitive damages are not intended to address a debtor's injuries but are aimed at "deterrence and retribution" of actions that conflict with required legal standards of conduct.[39] A bankruptcy court considers five factors in awarding punitive damages for a violation of the stay: "(1) the nature of the creditor's

---

[35] Docket No. 34 at pg. 1.
[36] *Id*. at pg. 6.
[37] *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).
[38] *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 776-77 (10th Cir. BAP 1998).
[39] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).

conduct; (2) the creditor's ability to pay damages; (3) the level of sophistication of the creditor; (4) the creditor's motives; and (5) any provocation by the debtor."[40]

For the reasons set forth above, the Court finds that Vivint's assertion that it has no record of receiving any of the bankruptcy papers from the Bankruptcy Noticing Center is either disingenuous or clear and convincing evidence of a reckless disregard for the receipt and processing of papers sent from a federal court. The Court also finds that Vivint's continuing actions to collect its pre-petition debt, and especially its assignment of the Debtors' account to the Collection Agency, to be egregious and outrageous conduct. As further support for this finding, the Court notes that the Collection Agency's demand is dated one day before the Attorney's Letter requested Vivint acknowledge in writing that it would cease collection actions.[41] Finally, Vivint's conduct in this case is so similar to its actions in the *Lara* case that it suggests a systemic and willful or negligent failure by Vivint to acknowledge and honor the effect of the automatic stay when its customers file for bankruptcy.

Vivint is clearly a sophisticated creditor. Its representative testified that it had over a million customers. He also testified that Vivint has a separate department for handling legal matters, that it understands the significance of a bankruptcy filing and the automatic stay, and that it has procedures in place to process bankruptcy papers.

As to Vivint's motivations, its representative testified that Vivint values and respects its customers and that it is sorry for what happened to the Debtors. However, the Court cannot overlook the fact that Vivint continued to contact the Debtors about payment on their account after multiple notices of their bankruptcy filing. Whether intentional or negligent, Vivint was trying to

---

[40] *PNC Bank N.A. v. Ogden (In re Ogden)*, 2016 U.S. Dist. LEXIS 35338, at *39-40, 2016 WL 1077355, at *36-37 (D. Colo. Mar. 18, 2016).

[41] The Attorney's Letter asked for written confirmation from Vivint by May 4, 2018 that it would cease collection actions, and the communication from the Collection Agency is dated May 3, 2018.

collect over $700 on a debt that was ultimately discharged by the bankruptcy. While these Debtors were sophisticated enough to know Vivint was stayed from collecting its debt, the Court wonders how many unsophisticated or *pro se* debtors respond to Vivint's requests for payment and threats of legal action by paying on a debt that was discharged in their bankruptcy case.

Lastly, the Debtors did nothing to provoke Vivint to treat them in this manner except to appropriately and graciously send the Attorney's Letter asking Vivint to honor the stay and to stop contacting the Debtors.

To protect the integrity of the bankruptcy system and the automatic stay, and to convince Vivint to give greater heed to bankruptcy notices, the Court awards the following punitive damages.[42]

Mrs. Kelley testified that she received from and had communications with Vivint in January 2018. But the first documented communication from Vivint was the telephone call from Joyce Black on February 15, 2018, and the email demand for payment from Vivint dated February 16, 2018.[43] By these dates, Vivint had been served with the following bankruptcy papers: (1) "Notice of the Chapter 13 Bankruptcy Case" on November 24, 2017; (2) Debtor's Chapter 13 Plan on November 24, 2017; (4) Notice of Substitution of Counsel on February 9, 2018; and (5) "Notice of Chapter 7 Bankruptcy Case" on February 11, 2018. The Court does not award punitive damages for the telephone call as there was no specific demand for payment, and the phone message only indicated that "there's an issue with your account that must be resolved immediately." However, the February 16, 2018 email was a clear attempt to collect a debt, but it does not include the threat

---

[42] *PNC Bank N.A. v. Ogden (In re Ogden)*, 2016 U.S. Dist. LEXIS 35338, at *39-40, 2016 WL 1077355, at *12 (D. Colo. Mar. 18, 2016) (punitive damages should be "high enough to actually change the creditor's behavior.").

[43] Debtors' Exhibit 3 at pg. 1-2.

to turn the matter over to collections. For this violation of the stay, the Court awards $2,000 in punitive damages.

The next violation was Vivint's email sent on March 16, 2018. By then, telephone calls from the Debtor and the paralegal had informed Vivint that the Debtors were in bankruptcy and that further collection actions should cease. This email further contains the threat that "[i]f acceptable payment or payment arrangement is not made, Vivint will accelerate your agreement for immediate collection." For this violation of the stay, the Court awards $5,000 in punitive damages.

The last violation was Vivint's assignment of the Debtors' account to the Collection Agency on May 3, 2018. By this time, the Bankruptcy Noticing Center had served Vivint with a notice to file a proof of claim in the Debtors' case. In addition, the Attorney's Letter had been mailed to Vivint at the Provo Address. Vivint's assignment of Debtors' account to the Collection Agency is an aggravated collection action and caused the Debtors unnecessary anxiety because they would now have to fight with the Collection Agency. At this point, the Debtors had spent almost five months trying to convince Vivint to stop contacting them about this dischargeable debt. It caused them stress, it cost them time in communicating with their attorney and with Vivint, and it required them to take time off work and out of their lives to deal with a matter that should have simply ceased upon Vivint's receipt of the first bankruptcy notice in November 2017.

Vivint expressed contrition, but it also clung too tightly to its unbelievable story that it never had notice of the Debtors' bankruptcy filing.[44] The Court is concerned that Vivint may perceive that the financial benefit of collecting from unsophisticated debtors is greater than the

---

[44] *See PNC Bank N.A. v. Ogden (In re Ogden)*, 2016 U.S. Dist. LEXIS 35338, at *39, 2016 WL 1077355, at *12 (D. Colo. March 18, 2016) (bank raised a number of "frivolous defenses" for its stay violation that further justified imposition of punitive damages).

cost of being tagged with a stay violation. Indeed, as seen in the *Lara II* case, Vivint has paid nothing on the $31,980 money judgment for violating the stay even though it had been served on Nathan Wilcox, Vivint's general counsel.[45] Further, when the Court asked about the *Lara* cases at the hearing, Vivint's counsel indicated that Vivint was completely unaware of the decisions or the money judgment – which assertion again seems implausible.

Based on these aggravating factors, the Court awards punitive damages of $15,000 for Vivint's third stay violation in referring the Debtors' account to the Collection Agency. Combined, the Court awards a total of $22,000 in punitive damages.

Vivint is a national company with over a million customers. If anything, the Court is concerned that its award of punitive damages will be ignored, as it was in *Lara*, or viewed as a negligible annoyance rather than as an impetus for immediate change to ensure that Vivint timely honors the automatic stay when it receives a notice of a bankruptcy filing relating to one of its customers. The Court hopes for the latter but fears for the former given that Vivint has already ignored one judgment for sanctions for the same conduct.

## IV.    CONCLUSION

In conclusion, the Court finds that Vivint did not rebut the presumption that it received the served notices of the Debtors' bankruptcy case. And in any event, Vivint had actual knowledge of the Debtors' bankruptcy case as early as February 21, 2018. Vivint's collection actions beginning in January 2018 and continuing through May 2018 constituted willful violations of the automatic stay under § 362(k).

The Court awards damages as follows:

1. $40 in actual damages and $22,000 in punitive damages payable to the Debtors;

---

[45] *In re Lara*, No. 16-5020, 2017 Bankr. LEXIS 2527, at *2, 2017 WL 4457436, at *1 (Sept. 6, 2017 Bankr. N.D. Tex.).

2. Attorneys' fees and costs payable to Harward & Associates pending further order of the Court after the filing of an amended application for compensation by Debtors' Counsel.

The Court will issue an Order consistent with this Decision.

_____ooo0ooo_____

**DESIGNATION OF PARTIES TO RECEIVE NOTICE**

Service of the foregoing MEMORANDUM DECISION ON MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY (DOCKET NO. 34) shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- James W. Anderson    jwa@clydesnow.com, jritchie@clydesnow.com
- Tom Cook    lundbergecfmail@lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- Mary M. Hunt tr    hunttrustee@dorsey.com, hunt.peggy@dorsey.com;UT18@ecfcbis.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Aaron M. Waite    aaronw@w-legal.com, JodyR@w-legal.com
- W. Earl Webster    earl.webster@harwardlaw.com, chandrielle.webster@harwardlaw.com
- Brian S. Wurtz    brian@beehivelaw.com, ecfbeehivelegal@gmail.com;sally@beehivelaw.com;bryan@beehivelaw.com;wurtzbr72417@notify.bestcase.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.